Filed 11/29/22 In re R.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.T., <br><br> Defendant and Appellant. | F084406 <br><br> (Super. Ct. No. JD142846-00) <br><br> **OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from orders of the Superior Court of Kern County. Christie Canales Norris, Judge.

Sara Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Smith, J. and Meehan, J.

**<u>INTRODUCTION</u>**

C.T. (mother) and D.M. (father) are the parents of R.M. (born August 2021). Mother appeals from the juvenile court's dispositional order pursuant to Welfare and Institutions Code section 360.[1] Mother's sole contention on appeal is that the Kern County Department of Human Services (department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about R.M.'s possible Indian ancestry.[2] The department concedes error, but maintains the error was harmless and argues that because proceedings are ongoing, ICWA error can be cured without disturbing the dispositional findings and orders.

For the reasons discussed herein, we accept the department's concession of error. However, consistent with our recent decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) __ Cal.App.5th __ [2022 Cal.App. Lexis 923] (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, **4–5].)

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2.

## I. Investigation and Petition

On December 18, 2021, law enforcement responded to mother and father's home and found various sharp objects, shattered glass, and drug paraphernalia on the floor within R.M.'s reach, and no running water in the home. R.M. was placed in protective custody and the parents were arrested.

During mother's investigative interview, mother reported she did not have Indian ancestry. Mother has two older sons who are not a part of this appeal. She reported maternal grandmother and maternal grandfather who live in Oklahoma have legal guardianship of one son, and maternal aunt T.H., who also lives in Oklahoma, adopted her other son. Mother had a good relationship with the maternal grandparents, but did not speak to T.H. She wanted maternal grandmother and maternal aunt C.M.[4] to be considered for placement and provided their phone numbers.

During father's investigative interview, father also reported he did not have Indian ancestry. He said he and mother had been living together " 'on and off,' " and mother had been otherwise living with paternal aunt T.M., who lived down the street. Because they had no running water, they would go to T.M.'s house to bathe R.M. and get clean water. He reported paternal grandmother also lived down the street. Father provided the

---

[3] Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

[4] Although the department initially identified C.M. as a paternal aunt, this appears to have been in error. Mother identified C.M. as "her" aunt and maternal grandmother referred to C.M. as her sister-in-law, indicating she was part of the maternal family, and she is referred to as "maternal aunt" and "maternal great aunt" elsewhere in the record. Aunts are included in the statutory definition of " 'extended family member,' " but great-aunts are not. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The distinction ultimately has no impact on our analysis because C.M., who was interested in placement, is included within "others who have an interest in the child," for whom the statutory duty of initial inquiry is the same as it is for extended family members. (§ 224.2, subd. (b).)

department with paternal grandmother's phone number. In addition, he provided paternal grandfather's name, but said he did not have a relationship with him because "he left when he was born," and denied having any siblings. Father wanted R.M. placed with paternal grandmother or T.M, but stated he was not opposed to placement with maternal grandmother or C.M.

On December 21, 2021, the department filed a petition on behalf of R.M. pursuant to section 300, subdivision (b) (failure to protect). The petition contained an Indian Child Inquiry Attachment form (ICWA-010(A)) indicating the social worker asked both parents about Indian ancestry and they gave no reason to believe R.M. is or could be an Indian child.

## II. Detention

On December 22, 2021, father and mother filed Parental Notification of Indian Status forms (ICWA-020) stating they did not have Indian ancestry. That same day, the juvenile court conducted a detention hearing. Mother, father, and paternal grandmother were present. The court stated it received both parents' ICWA-020 forms indicating they did not have Indian ancestry and found there was no reason to believe or know that R.M. is an Indian child and that ICWA did not apply. The court found R.M. came within section 300 and ordered him detained from the parents.

## III. Jurisdiction and Disposition

The jurisdiction social study reiterated that the juvenile court found ICWA did not apply at the detention hearing. The disposition social study reflected the department had been in contact with maternal grandmother, paternal grandmother, C.M., T.M., and paternal cousin Co.M. regarding possible placement.

On February 4, 2022, the department closed the family finding portion of the case. It had identified 10 maternal relatives and 26 paternal relatives, which included children and deceased relatives. The department mailed notification letters, civil rights pamphlets, and relative placement pamphlets.

4.

On February 24, 2022, the juvenile court conducted a combined jurisdiction and disposition hearing. Both parents were present, but the hearing was continued.

On April 25, 2022, the juvenile court conducted a continued combined jurisdiction and disposition hearing. Both parents were present, but the hearing was continued again.

On May 23, 2022, the juvenile court conducted a combined jurisdiction and disposition hearing. Both parents were present. The juvenile court found the allegations in the petition true, R.M. was adjudged a dependent of the court and was ordered removed from parental custody, the parents were ordered reunification services and supervised visits, and a six-month review hearing was set. The court ordered prior orders not specifically set aside or modified to remain in full force and effect.

On May 27, 2022, mother filed a notice of appeal.

## DISCUSSION

### I.     ICWA

#### A.     Background

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 594; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *9–10], fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA

5.

25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10].)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10–11].)

## B.    Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' "[5] (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare

_____

[5]    Section 224.2, subdivision (k), was amended by Assembly Bill No. 2960 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to our discussion in this case.

department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[6] Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding

---

**6**    "Courts have recognized it is somewhat inaccurate to refer to the agency's ' " 'initial duty of inquiry' " ' [citation] because the duty ' "begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings' [citation]. However, in this case, like many others, an ICWA inquiry was made only of the parents and after the juvenile court found ICWA did not apply at the detention hearing, no further information was gathered. Given that our discussion on error … focuses on the first step of the inquiry and does not involve the duty of further inquiry or notice, we use the term duty of initial inquiry." (*K.H.*, *supra*, 84 Cal.App.5th at p. 597, fn. 10.)

7.

the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

## II.    Analysis

### A.    Summary of ICWA Inquiry

The record reflects that during the department's investigative phase, mother and father denied having Indian ancestry. They also filed ICWA-020 forms denying the same. Both parents appeared at the detention hearing, along with paternal grandmother, where the juvenile court acknowledged receipt of the parents' ICWA-020 forms and found ICWA did not apply. Although the court stated it had received the parents' ICWA-020 forms, it failed to make its own inquiry. Neither did the court inquire of the paternal grandmother or instruct the parties to inform the court if they subsequently received information indicating there is reason to know R.M. is an Indian child. (§ 224.2, subd. (c).) Moreover, the department was in contact with several relatives for placement

8.

purposes, but there is no indication the department conducted ICWA inquires of any of those relatives. (§ 224.2, subd. (b).)

As a result of the department's failure to inquire of those relatives, mother contends the department and the juvenile court failed to comply with their ICWA inquiry duties and, therefore, the matter must be remanded for compliance. The department concedes that the error resulted in an inadequate inquiry, but argues the error was harmless and that because the proceedings are ongoing, the error can be cured without disturbing the dispositional findings and orders.

Recently, in *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the four general approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *4–5].) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

**B.     Standard of Review**

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *17].) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18].)

9.

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *18].)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18–19]; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the

10.

facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19].)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19–20].)

### C. Department and Juvenile Court Erred

#### 1. Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

11.

"If the court[ or the department] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[7]

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

In this case, the department inquired only of mother and father, which fell short of complying with the plain language of section 224.2, subdivision (b). Neither did the juvenile court conduct an ICWA inquiry at the parties' first appearance in court or "instruct [them] to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among

---

[7] All further references to rules are to the California Rules of Court.

competing policy considerations in enacting laws is a legislative function.' [Citation.] [County welfare departments] and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once [county welfare departments] provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

"[T]he law demands more than merely inquiring of [m]other and [f]ather" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the department does not dispute. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and be supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion to determine [that] the [department's] inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *43].)

Under these circumstances, the department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b) & (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### D. Prejudice

"Where, as here, the deficiency lies with [a department's] duty of initial inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of

pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *32–33].)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *33].)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[8] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37].) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene

---

**8**  *People v. Watson* (1956) 46 Cal.2d 818, 836.

in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 609; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34].) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34–35].) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37–38].) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38], quoting *K.H.*, at p. 591), and " 'requiring adequacy as the law directs "is generally the only meaningful[ ] way to safeguard the statutory right[s]" as intended under ICWA and related California

15.

law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38–39], quoting *K.H.*, at p. 609.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *40].) Here, the department's inquiry, limited only to mother and father " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights to tribes, as intended under ICWA and California law' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *42], quoting *K.H.*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *41], quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial.

We recognize that mother is appealing from the juvenile court's dispositional order, and that the department and juvenile court "have an affirmative and continuing duty to inquire whether a child … is or may be an Indian child." (§ 224.2, subd. (a).) However, briefing was completed without the benefit of our decisions in *K.H.* and *E.C.*, it is unclear from the department's position whether it recognizes the degree to which its inquiry was deficient,[9] and the juvenile court's ICWA finding was not supported by

---

[9]     We are not convinced the department understands why its inquiry was deficient. In its reply brief, the department argued its error was harmless as the "duty of *further* inquiry was never triggered because the *first* duty did not reveal any evidence to suggest there was a 'reason to believe' the child was an Indian child. The record on appeal is insufficient to have obligated the agency to pursue additional inquiry with extended family members." (Italics added.) The department is mistaken to believe that inquiring

substantial evidence of a proper, adequate and duly diligent inquiry. We have explained why the error in this case, left uncorrected, is prejudicial; and in *K.H.* and *E.C.*, we explained that " 'if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.' " (*E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37–38], quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 609.)

Therefore, the juvenile court's finding that ICWA does not apply is vacated and this matter is remanded. The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *44], quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [R.M.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *44–45], quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is vacated and this matter is remanded. The court is directed to order the department to comply with the inquiry

---

of extended family members is only required when there is reason to believe the child is an Indian child. The law is clear—the department's initial duty of inquiry includes asking extended family members, or others who have an interest in the child, if the child is, or may be, an Indian child. (§ 224.2, subd. (b).)

requirements set forth in section 224.2, subdivisions (b) and (e), and the documentation provisions of rule 5.481(a)(5). In all other respects, the dispositional findings and orders are affirmed.